W. C. GAITHER, *Plaintiff in Error*, vs. H. L. ANDERSON, *Defendant in Error*.

135 So. 840.

139 So. 587.

Division B.

Decision filed July 9, 1931.

Petition for rehearing granted in part October 8, 1931.

Opinion on rehearing filed January 28, 1932.

*Giles J. Patterson,* of Jacksonville, and *Mabry, Reaves & White,* of Tampa, for Plaintiff in Error;

*Crawford & May* and *H. L. Anderson,* all of Jacksonville, for Defendant in Error.

PER CURIAM.—This cause having heretofore been submitted to the Court upon the transcript of the record of the judgment herein, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said judgment; it is, therefore, considered, ordered and adjudged by the Court that the said judgment of the Circuit Court be, and the same is hereby affirmed.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

---

### ON REHEARING.

PER CURIAM.—In a suit at law involving a claim of $14,-400.00 for unpaid balance of a $40,000.00 real estate commission, there was a submission of the cause to a jury which returned a verdict for the defendant after the Court had over-ruled plaintiff's motion for a directed verdict in his favor. Motion for a new trial was denied and plaintiff took writ of error.

By a memorandum decision without opinion the judgment rendered was affirmed by Division B of this Court on July 9, 1931. After that, however, a rehearing was granted on plaintiff in error's petition, the prayer being that the Court reconsider the record as to the grounds of plaintiff's motion for a new trial on account of newly discovered evidence.

At the trial, the principal controversy between the parties was (1) whether the contract of March 20, 1925, which plaintiff Gaither had procured for the sale of the lands to O. B. Stuart and associates, was an option contract, or a binding contract of sale such as would have entitled the plaintiff to his commissions for merely procuring it; (2) if it was an option contract only at its inception, whether it had been thereafter sufficiently complied with under its terms, to ripen into a binding contract of sale.

Whether or not the contract as drawn was an option contract at its inception as defendant claimed, was determined by the trial judge adversely to plaintiff in error. By that ruling it was held by the court below that such contract was not a binding contract of sale, and did not become so until after Stuart had paid each of five agreed installments of the purchase price, as provided in the contract, the last installment being one of $100,000.00 which fell due December 1, 1925.

Upon such theory the cause was submitted to the jury to determine as a question of fact, whether or not the last installment of $100,000.00, which amount of money had been paid to Anderson, was paid to him under the option contract just referred to, so as to fix plaintiff's right to his commission of $40,000.00 on the sale he was claiming to have made by reason of procuring its execution.

On the authority of Behrman vs. Max, 137 Sou. Rep. 120, and Helie v. Wickersham, 137 Sou. Rep. 226, we affirm the construction placed on the contract by the trial judge, and hold that the issue of payment under it was properly submitted to the jury to determine as a question of fact whether the contract ever ripened into one of purchase and sale, i. e. whether the required payments under it were made.

Under the terms of the contract itself it is pertinent to point out that it was specifically agreed "that this contract is and shall remain an option contract, and not other-

wise, until the payment herein to be made by the buyers to the seller, etc.'' Under this clause, the trial judge properly ruled that no binding contract of sale resulted until the last of the five specified payments provided for therein, had actually been made by the buyers to the sellers, and that until such payments should be completed, plaintiff's commissions claimed under the second count for work done had not been earned.

O. B. Stuart and associates by this contract were bound to make five initial payments under it, aggregating $200,-000.00, on or before December 1, 1925. Stuart, in his deposition, testified that these payments were in fact made.

Defendant, on the other hand, denied that such payments were made under the contract of March 20, 1925, and asserted on the contrary, that the last payment of $104,000.00 he received, which should have been the $100,-000.00 payment due under the contract on December 1, 1925, was in fact the first payment under another entirely new and different sale, of the property, which had been made by defendant to Seashore Estates, Inc., without plaintiff's assistance, after the first contract of March 20, 1925, had been surrendered and cancelled in September, 1925, because of inability of purchasers to perform it.

Whether or not the payments aggregating $200,000.00, which the evidence tended to show were received by Anderson from some source, after the contract of March 20, 1925, was executed, were received by him under that contract, or under the alleged disconnected and subsequent sale, was the controlling issue submitted to the jury, and found by it in defendant's favor.

No such defense as this was suggested by defendant's pleadings.

It is evident from the record of what happened at the trial, that plaintiff's counsel was not only taken by surprise by such contention on defendant's part, but that he was left wholly without means at hand at that time to re-

but it, without investigating the details of the Seashore Estates transaction. This transaction appeared to be in nowise material to the defense suggested by defendant's pleas. This is especially true in view of defendant's letter of October 1, 1925, in which he remitted $20,000.00 to apply on plaintiff's commissions and confessed that he owed him $17,000.00 more. All of defendant's testimony along this line was strenuously objected to, and permitted by the Court to be offered in evidence over plaintiff's protest. Conceding that any such defense was proper at all under the pleadings filed and permitted to stand in answer to the first count (which was the account stated), it is beyond cavil that plaintiff should be allowed full opportunity to rebut defendant's attempt to repudiate his own unqualified admission of indebtedness, as set out in his letter to plaintiff under date of October 1, 1925.

This letter of October 1, 1925, which Anderson sent to Gaither, read as follows:

"W. C. Gaither, Esq.,             .             October 1, 1925.
Tampa, Fla.
Dear Sir: I wired you today saying I am sending you check for $20,000.00 and would send balance in a few days. I am enclosing you check for $20,000.00 on the First National Bank of Tampa. As soon as I can straighten out the balance of my deal, I will send you the balance due you. I have paid before this date $3000.00, and I estimate that the balance I owe you will be $17,000.00. Please confirm this, by return mail, and oblige.
                              Yours truly,
                              H. L. ANDERSON."

The documentary evidence referred to in the plaintiff's motion for a new trial as newly discovered evidence, appears to have been material to the issue brought into the case at the trial through the surprise testimony by which defendant Anderson attempted to explain away the effect of this written admission of indebtedness.

It is obvious from the record that plaintiff's counsel had

prepared his case with reasonable diligence as to all ordinary issues suggested by defendant's pleadings which would likely be permitted by the trial court at the trial. It is plain also that counsel for plaintiff was taken by surprise by defendant's verbal testimony concerning the intended purpose of the Seashore Estates deal, the defendant's version of which was never prior to the trial suggested by any intimation from him to that effect.

While the general rules regulating the granting of new trials on the ground of newly discovered evidence should be adhered to, they are not inflexible and must sometimes bend in order to meet the ends of justice. The application of this principle is called for in cases where the evidence upon which the verdict was rendered for one party would be refuted or largely over-thrown by the light thrown upon the question if the alleged newly discovered evidence had been available at the trial. See Tyson v. State, 87 Fla. 392, 100 Sou. Rep. 254; Adams v. State, 55 Fla. 1, 46 Sou. Rep. 152.

The evidence discovered and referred to in plaintiff's motion for a new trial in this case, was material to the issue raised by defendant's verbal testimony concerning the nature of the Seashore Estates transaction, which at the trial defendant testified for the first time, was an entirely new and disconnected land deal from the Stuart-Anderson transaction, in that it was not a re-sale of the property under the Stuart-Anderson contract. This new evidence was not cumulative, and might produce upon another trial a different result. The plaintiff and his counsel appear to have used due diligence in discovering the documents after the trial, by promptly making an investigation of the truth of what defendant himself first suggested in his testimony at the trial.

Plaintiff sued for a 5% commission on the transaction involved in the contract of March 20, 1925, which Anderson admittedly had procured from O. B. Stuart and associ-

ates. The real issue as finally made at the trial, was whether or not a part of the $200,000.00 shown to have been paid to Anderson was under a different and later land deal or under a re-sale based on the original one. This was a question of fact to be determined by the jury, and the evidence suggested in the motion for a new trial as evidence newly discovered by plaintiff, is peculiarly applicable to this issue and should be considered in determining plaintiff's rights.

The judgment is therefore reversed for a new trial.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.